UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEANNE FERRANTE,

    Plaintiff,

    v.

COSTCO WHOLESALE CORPORATION, et al.,

    Defendants.

CASE NO. C08-591RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the motion (Dkt. # 24) of Defendant Costco Wholesale Corporation ("Costco") for summary judgment on all of Plaintiff Leanne Ferrante's claims. Ms. Ferrante requested oral argument, Costco did not, but the court finds oral argument unnecessary in light of its disposition today. For the reasons stated below, the court DENIES Costco's motion and directs the parties to consider a new trial date as stated at the conclusion of this order.

## II. BACKGROUND

Leanne Ferrante was a Costco employee from September 1997 until Costco fired her in June 2007. Over the years she worked in a variety of positions, but at the time of her termination she was working as an assistant in Costco's Issaquah warehouse store. Costco's stated basis for firing her was that she had been excessively absent.

ORDER – 1

The record demonstrates that "excessively absent" is a charitable description of Ms. Ferrante's attendance record. Beginning in 1999, Ms. Ferrante took a series of leaves that added up several years of missed days by the time Costco fired her. During the last five years of her employment, she was absent for about three years. The reasons for her absences varied. She took some leave to address issues with her family, including the dissolution of her marriage and a host of issues related to caring for her son. She took leave for depression, for surgeries, and for stress and anxiety. Some of her absences came in lengthy contiguous periods of time, some of them came intermittently. It is undisputed that Ms. Ferrante exhausted every form of allowable leave. She used up all of her vacation days, all of her sick days, and all of the leave available to her under the federal Family and Medical Leave Act. During that time, Costco repeatedly permitted her to take additional leave, contrary to its own leave policies. There is no question that Costco could have terminated Ms. Ferrante for excessive absenteeism at many times during her tenure.

Beginning sometime in 2007, Ms. Ferrante claims that Costco became aware that she had lupus, or at least that she believed she had lupus, or some other disability. There is no question that Costco did not know this before April 2007. On April 16, 2007, Ms. Ferrante fainted while working. Paramedics arrived to transport her to the hospital. She was in an employee break room, and it is undisputed that a co-worker, Tamara Youngblood, was in the room with her, as well as Ms. Ferrante's manager, Luis Silveira. According to both Ms. Ferrante and Ms. Youngblood, Ms. Ferrante told the paramedics that she had lupus. Both Ms. Ferrante and Ms. Youngblood testified that Mr. Silveira acknowledged this announcement with a look of shock and recognition. Ms. Ferrante also declares that she reiterated that she had "lupus and fibromyalgia" on April 18, 2007, when she returned to work for the first time and approached Mr. Silveira. Ferrante Decl. ¶ 21. Mr. Silveira denies that Ms. Ferrante ever revealed that she had lupus or any other disability before she was fired. Silveira Decl. ¶ 10. There is no medical evidence that

ORDER – 2

Ms. Ferrante fainted because of lupus or any other disability. Other than evidence from Ms. Ferrante and Ms. Youngblood regarding April 16 and April 18, there is no evidence that Costco was aware that Ms. Ferrante had lupus or any other disability.

After April 16, 2007, Ms. Ferrante continued to receive disciplinary notices for her excessive absenteeism, just as she had received such notices before April 16. She admits that she was absent many times during this time period, each time because she was experiencing pain and fatigue. She received one disciplinary notice on May 11, 2007. She received another on May 26, 2007. The latter notice advised her that she was suspended for three days pending a decision to terminate her. She was scheduled to meet with Mr. Silveira on June 1, 2007. Although Ms. Ferrante had met with Mr. Silveira or other supervisors formally and informally many times in 2007, including several times after her April 16 fainting incident and her April 18 return to work, there is no evidence that she told anyone at Costco that her absences were related to lupus or another disability. Moreover, although it was apparent that Ms. Ferrante hoped Costco would continue to excuse her absences, there is no evidence that she requested any particular accommodation from Costco other than to permit her to continue to be absent essentially whenever she wanted.

On June 1, Ms. Ferrante met with Mr. Silveira and presented him with a letter from Dr. Dale Alsager. In the letter, Dr. Alsager stated that Ms. Ferrante had been under his care since March 30, 2007, for neck, arm, and back pain which he believed was related to a 2005 on-the-job injury.[1] Ferrante Decl., Ex. D. He also alluded to "a new diagnosis of a serious nature which may have been precipitated by the work related accident." *Id.* He did not explain what the new diagnosis was. He stated, however, that she would need "time off for Dr. visits and blood draws periodically," and that she would "require special consideration for unpredictable fatigue and joint pain." *Id.* The letter

---

[1] Dr. Alsager's reference to an on-the-job injury in 2005 was likely error. The sole on-the-job injury reflected in the record is a November 2006 injury to Ms. Ferrante's shoulder.

ORDER – 3

made no mention of lupus or any other specific condition.[2] Although Mr. Silveira discussed Dr. Alsager's letter with John McKay, one of his supervisors, they nonetheless decided to terminate Ms. Ferrante.

According to Ms. Ferrante, Costco promised to help find her a position to which she could return after she addressed the issues underlying her absenteeism. Although she contends that Costco breached this promise, she does not identify any position that she was qualified to fill after her termination. She provided Costco with minimal updated information on her medical condition. For example, Dr. Alsager wrote another letter on her behalf on July 10, 2007, in which he said that she possibly had rheumatoid disease, colitis, lupus, and other "possible treatable systemic diseases, which may not be work related." Ferrante Decl., Ex. E. Although Dr. Alsager could not pin down a diagnosis, he opined that "there is no reason why, with proper treatment, she cannot make a recovery and enjoy sustained maximal function at work and home." *Id.* There is no evidence, however, that Ms. Ferrante ever provided Costco with an accommodation request that explained how long her treatment would last, what accommodations she would need during treatment, and what positions she was qualified to fill. Other than the July 10, 2007 letter, there is no evidence that she updated Costco on the status of her health or any disability she might have had. Moreover, there is little evidence that accommodating Ms. Ferrante's disability would have addressed her excessive absenteeism. Ms. Ferrante missed work for many reasons, most of which are admittedly unrelated to her disability.

Ms. Ferrante contends that Costco fired her because it believed she had lupus, that lupus is a disability under Washington law, and that Costco also failed to reasonably accommodate her disability. The court uses "lupus" as shorthand for whatever disability

---

[2] There are two versions of Dr. Alsager's June 1, 2007 letter in the record. The version that Ms. Ferrante provided included a two-page attachment titled "Symptoms of Autoimmune Disease." Ferrante Decl., Ex. D. The version that Mr. Silveira provided did not include any attachment. Silveira Decl., Ex. M. Dr. Alsager's letter makes no reference to any attachment, and there is no evidence in the record that bears on whether Ms. Ferrante provided the attachment to Mr. Silveira when she met with him on June 1, or at any time thereafter.

ORDER – 4

Ms. Ferrante is claiming. Lupus was the only disability she identified at her deposition. Winterbauer Decl. (Dkt. # 25), Ex. A (Ferrante Depo. at 310). In her opposition to Costco's motion, however, she was much more vague, referring to her disability variously as "extreme fatigue," "muscle weakness and fatigue," "muscle pain," and a host of associated symptoms that she collectively viewed as a "medical condition, which was likely lupus." Pltf.'s Opp'n at 12-13. According to her, Costco violated the Washington Law Against Discrimination ("WLAD") by terminating her because of her disability and by failing to accommodate it. Costco says that it fired her solely because she was excessively absent, that no reasonable accommodation would have addressed her absenteeism, and asks the court to grant summary judgment against Ms. Ferrante's disability-related WLAD claims.[3]

### III. ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must first show the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), shifting the burden to the opposing party to show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

---

[3] Ms. Ferrante also brought a Family and Medical Leave Act claim and a claim for intentional infliction of emotional distress. She has abandoned both of those claims. Pltf.'s Opp'n at 1 ("Ms. Ferrante agreed . . . that her claims for FMLA violations and for intentional infliction of emotional distress can be dismissed."). Although there are no federal claims remaining in this litigation, the court exercises its discretion to retain jurisdiction over this matter, absent any contrary suggestion from the parties. *See* 28 U.S.C. § 1367(c)(3).

ORDER – 5

Ms. Ferrante presents two species of disability discrimination claims: that Costco fired her at least in part because of her disability, and that Costco failed to reasonably accommodate her disability. Each requires a different analysis. *See Roeber v. Dowty Aerospace*, 64 P.3d 691, 695-96 (Wash. Ct. App. 2003).

**A.      Ms. Ferrante Presents a Triable Case of Disability Discrimination.**

For claims of employment discrimination, the court applies the familiar summary judgment standard via the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Though adopted in the context of discrimination claims invoking Title VII of the Civil Rights Act of 1964, the *McDonnell Douglas* analysis has become the framework for a host of employment statutes, including the WLAD. *See generally Hill v. BCTI Income Fund-I*, 23 P.3d 440, 446 (Wash. 2001). WLAD disability discrimination claims are no exception. *See Anica v. Wal-Mart Stores, Inc.*, 84 P.3d 1231, 1236 (Wash. Ct. App. 2004). The *McDonnell Douglas* framework places the burden on the plaintiff to offer proof of a prima facie case of discrimination. *Dean v. Mun. of Metro. Seattle*, 708 P.2d 393, 399 (Wash. 1985). Satisfying the burden shifts the onus to the employer to provide evidence of a non-discriminatory reason for the allegedly discriminatory action. *Id.* The plaintiff then bears the burden of offering evidence that the non-discriminatory reason is pretextual. *Id.* A prima facie case of disability discrimination consists of proof that the plaintiff was "(1) disabled, (2) subject to an adverse employment action, (3) doing satisfactory work, and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Anica*, 84 P.3d at 1236; *see also Roeber*, 64 P.3d at 696 (providing slightly different description of prima facie case).

Ms. Ferrante establishes a prima facie case, if only by the thinnest margin. The court begins by noting that whether Ms. Ferrante was disabled, the evidence that Costco knew she was disabled is not strong. The parties offer little discussion of the definition of disability that applies to Ms. Ferrante, but she concedes that her case accrued in the

ORDER – 6

narrow window in which *McClarty v. Totem Elec.*, 137 P.3d 844 (Wash. 2006), governs the question.[4] *McClarty* held that a plaintiff "has a disability if he (1) has a physical or mental impairment that substantially limits one or more of his major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment." 137 P.3d at 851. The evidence establishes that Ms. Ferrante likely at least believed that she had lupus or some other disability. The sole evidence that Costco was aware of this, however, is that Ms. Ferrante said as much in Mr. Silveira's presence while paramedics were attending her on April 16, 2007, and two days later when she spoke to Mr. Silveira after returning to work. This evidence comes solely from Ms. Ferrante and Ms. Youngblood. Although Ms. Ferrante was employed for at least six weeks between that incident and her firing, there is no evidence in the record that suggests that she again raised the lupus issue, or that Costco was aware of it. This is so despite Ms. Ferrante repeatedly inquiring about the availability of additional leave over the same period, and repeatedly meeting with Mr. Silveira and other supervisors. After receiving notice that she was to be terminated for excessive absences, Ms. Ferrante obtained a letter from Dr. Alsager. That letter says nothing about lupus, and even Ms. Ferrante does not contend that she mentioned lupus when she presented the letter to Mr. Silveira on June 1, 2007. Indeed, the letter suggests that Dr. Alsager was primarily concerned with muscle and joint pain in the wake of an on-the-job injury. Nonetheless, evidence from Ms. Ferrante and Ms. Youngblood regarding her statements to paramedics in Mr. Silveira's presence raises a triable issue over whether Costco regarded Ms. Ferrante as having a disability.

---

[4] In *McClarty*, the Washington Supreme Court adopted the definition of disability found in the federal Americans with Disabilities Act. 137 P.3d at 851. The Washington Legislature acted swiftly to undo that result, explicitly defining disability in the WLAD for the first time. *Hale v. Wellpinit Sch. Dist. No. 49*, 198 P.3d 1021, 1024-25 (Wash. 2009) (discussing *McClarty* and legislative response). That definition, now found at RCW 49.60.040(7), applies to "all causes of action occurring before July 6, 2006, and to all causes of action occurring on or after [July 22, 2007,] the effective date of this act." *Hale*, 198 P.3d at 1025 (citing Laws of 2007, ch. 317, § 3). Ms. Ferrante's disability-related claims occurred within the approximately 13-month window in which the *McClarty* definition applies.

ORDER – 7

Although there is no dispute that Ms. Ferrante's termination was an adverse employment action, the evidence that she was doing satisfactory work is dubious. There is no dispute that she missed work repeatedly, and that Costco expressed its dissatisfaction to her repeatedly. There is also no dispute that she was disciplined for other inappropriate conduct, including "grazing" food from Costco that she had not paid for, and an incident in which her cash register till was $30 short at the end of her shift. Costco, however, has never suggested that it fired her for any reason other than her absenteeism. Given that Costco had repeatedly allowed her to miss work either without consequences or with consequences less severe than termination, a jury could conclude that her job performance was satisfactory despite her absences. Of course, a jury might conclude otherwise, finding based on her long history of absenteeism that she was not performing her job satisfactorily.

Indeed, it is Costco's enduring tolerance of Ms. Ferrante's absences that raises a triable issue as to the final element of a Ms. Ferrante's prima facie case: whether a jury could infer that she was terminated because of her disability. Before Ms. Ferrante allegedly revealed that she believed she had lupus, Costco had seemingly infinite patience for her absences. After she allegedly revealed she had lupus, Costco no longer permitted such absences, and terminated her about six weeks later.

Costco easily meets its burden to provide evidence of a non-discriminatory reason for firing Ms. Ferrante. Its stated reason, that she was excessively absent, is at least arguably a non-discriminatory reason. A reasonable jury could conclude that Ms. Ferrante's long history of absenteeism gave Costco a lawful reason for firing her. Moreover, because there is scant evidence that the absences between Ms. Ferrante's fainting episode and her termination had anything to do with lupus or any disability, a jury could find either that the absences preceding her termination were not because of her disability, or that Costco had no reason to know that those absences were because of her disability. As to any absences before Ms. Ferrante's fainting episode, the court finds no

ORDER – 8

evidence that would permit the conclusion that they were related to any disability. There is ample evidence from which a jury could conclude that absenteeism was the reason Costco fired her, and that Costco reasonably believed that all or most of her absences were not the result of any disability.

Finally, Ms. Ferrante has presented evidence from which a jury could find pretext. As the court has noted, Costco's long history of tolerating Ms. Ferrante's absences, coupled with a termination for absenteeism just six weeks after Ms. Ferrante allegedly disclosed her disability, is sufficient to raise a triable issue over whether Ms. Ferrante's disability, rather than her absenteeism, was a motivation for firing her. Again, a jury might conclude that in light of Ms. Ferrante's long history of absenteeism, Costco fired her not for any disability, but because it believed that even if it accommodated her disability, she would continue to be absent for reasons unrelated to her disability.

**B.     Ms. Ferrante Has a Triable Claim that Costco Failed to Accommodate Her.**

Ms. Ferrante's claim based on Costco's alleged failure to accommodate her disability requires her to prove that she had a disability, that she was qualified to fill one or more vacant positions at Costco, and that Costco failed to take affirmative measures to make known such job opportunities to her and determine if she was qualified for those positions. *Dean*, 708 P.2d at 400; *see also Roeber*, 64 P.3d at 697 (requiring employee to give employer "notice of the [disability] and its substantial limitations"). An employer has an affirmative defense if it can prove that a reasonable accommodation would impose an undue hardship on it. *Sharpe v. AT&T Co.*, 66 F.3d 1045, 1050 (9th Cir. 1995) (interpreting Washington law).

Like her claim that she was fired because of a disability, Ms. Ferrante's failure-to-accommodate claim narrowly survives summary judgment. The court begins by noting that for the reasons it has already discussed, Ms. Ferrante's claim that Costco knew she had a disability rests on shaky ground. Nonetheless, a jury could find that Costco did know she had a disability, and thus had an affirmative obligation to work with Ms.

ORDER – 9

Ferrante to place her in a position in which reasonable accommodations would allow her to perform satisfactorily. *See Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 877 (9th Cir. 1989) (describing accommodation obligation, and noting that it arises "even in the absence of a formal request from a handicapped employee"); *see also Downey v. Crowley Marine Servs., Inc.*, 236 F.3d 1019, 1022-23 (9th Cir. 2001) (describing WLAD accommodation obligation). The only accommodation Ms. Ferrante appears to have ever requested is permission to miss more work. Even now, with years to craft her position in this litigation, the court cannot be certain how much work Ms. Ferrante hoped to miss. The court cannot be certain, moreover, of whether Ms. Ferrante ever gave Costco a reason to believe that any accommodation would result in her coming to work on a regular basis. Ms. Ferrante seems to suggest that a few more absences would have allowed her to gain control over her disability. The evidence suggests, however, that she deemed herself unable to work for the entirety of June, July, and August 2007. The evidence also suggests that even if her lupus could be accommodated, that accommodation would not address myriad other factors that had caused her to miss years of work in the past and continued to cause her to miss work as of the day she was fired. A reasonable jury viewing her history of absenteeism might conclude that even if Costco did everything it could to accommodate Ms. Ferrante's disability, she would still fail to come to work on a regular basis for reasons that had nothing to do with that disability. Nonetheless, if a jury finds that it is plausible that a medical leave of absence could have allowed Ms. Ferrante to return to work as a reasonably reliable employee, Costco was obligated to consider that accommodation. *Kimbro*, 889 F.2d at 879; *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1135 (9th Cir. 2001) (interpreting Americans with Disabilities Act).

     In a typical case, the court could conclude as a matter of law that Ms. Ferrante's inability to attend work with any regularity made reasonable accommodation impossible. Attendance is ordinarily an essential job function, and Costco cites many cases

ORDER – 10

demonstrating as much. Def.'s Mot. at 17-18 (citing, *inter alia*, *Davis v. Microsoft Corp.*, 70 P.3d 126 (Wash. 2003)). In this case, however, Costco's long history of accommodating Ms. Ferrante's absences suggests that perhaps attendance was not essential in her case. A jury considering her long history of absenteeism could find that the evidence demonstrates that Ms. Ferrante is the rare employee for whom permitting ongoing absences would be a reasonable accommodation. A jury considering her long history of absenteeism could also find, of course, that Costco's history of permitting Ms. Ferrante's absences was an extraordinary accommodation, one it made out of a sense of altruism rather than reason or good business judgment. The court cannot, however, resolve this issue on summary judgment. A jury must decide, among other things, whether any reasonable accommodation would have allowed Ms. Ferrante to perform the essential duties of her job.

## IV. CONCLUSION

For the reasons stated above, the court DENIES Costco's motion for summary judgment. Dkt. # 24.

This matter is set for trial on March 22, 2010. Conflicts on the court's current trial calendar make it unlikely that date will be available. The court could commence this trial, to which the court has allotted five days, on any Monday in April except April 26. The court therefore directs the parties to meet and confer to select one of those dates for trial, and then contact Victoria Ericksen, the court's deputy clerk, at (206) 370-8517 to set a trial date. If appropriate, the parties may agree to a continuance of other pretrial deadlines in accordance with the new trial date.

DATED this 25th day of February, 2010.

The Honorable Richard A. Jones
United States District Judge

ORDER – 11